# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| JOSHUA DUANE BARNES, § | |
| Plaintiff, § | |
| § | Civil Action |
| v. § | No. SA-17-CA-1071-XR |
| § | |
| RONALD GIVENS, Senior Warden, § | |
| Connally Unit; FRANK STENGEL, § | |
| Assistant Warden, Connally Unit; § | |
| JOE CASTILLO, Major, Connally Unit; § | |
| BRYAN COLLIER, Executive Director, § | |
| Texas Department of Criminal Justice; § | |
| JOE GRIMES, Director of TDCJ § | |
| Region IV; P. CHAPA, Assistant Director § | |
| of TDCJ Region IV; AMBER JENKINS, § | |
| Mailroom Supervisor, Connally Unit, § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND DISMISSING PLAINTIFF'S CIVIL RIGHTS COMPLAINT

Before the Court is "Defendants Givens, Stengel, Robinson,[1] Collier, Martinez,[2] Gaitan,[3] and Jenkins' Motion to Dismiss Pursuant to Rule 12(b)(1) & 12(b)(6)." Def.'s Mot. to Dismiss, ECF No. 22. Briefing on this motion is complete in the wake of Plaintiff Joshua Barnes's "Response to Defendants First Motion to Dismiss." Pl.'s Resp, ECF No. 24. After reviewing the pleadings and for the reasons discussed below, the Court will grant Defendants' Motion and dismiss Plaintiff Joshua Barnes's "§ 1983 Complaint." Pl.'s Compl., ECF No. 1.

## I.    BACKGROUND AND PROCEDURAL HISTORY

---

[1] Federal Rule of Civil Procedure 25(d) allows for the automatic substitution of an official's successor for an official sued in his official capacity. Marcus Robinson is the current Connally Unit Major. He replaces Defendant Joe Castillo in his official capacity pursuant to Rule 25(d).

[2] Miguel Martinez is the current Region IV Director. He replaces Defendant Joe Grimes in his official capacity pursuant to Rule 25(d).

[3] Kathryn Gaitan is the current Region IV Assistant Director for TDCJ. She replaces Defendant P. Chapa in her official capacity pursuant to Rule 25(d).

Barnes, Texas prisoner number 01546645, is currently incarcerated at the Telford Unit of the Texas Department of Criminal Justice (TDCJ) in New Boston, Texas. Pl.'s Notice of Address Change, ECF No. 25; https://offender.tdcj.texas.gov/OffenderSearch/search.action (search for TDCJ No. 01546645, last visited Oct. 21, 2019). He is serving sentences imposed by state courts after his convictions for aggravated assault, burglary of a habitation, tampering with evidence, and escape. His maximum sentence date is January 25, 2052.

Barnes objects to his prison classification and placement in a Complaint filed pursuant to 42 U.S.C. § 1983 on October 19, 2017. Pl.'s Compl., ECF No. 1. His supporting documentation establishes he received a Security Precaution Designator (SPD) Code due to his three prior convictions for escape. Pl.'s Compl., Ex. 1 (Offender Grievance Form), p. 2, ECF No. 1-1. He alleges—apparently as a consequence of the SPD Code—Defendants placed him in administrative segregation with "cell rotation" during his confinement at the Connally Unit in Kenedy, Texas. Pl.'s Compl. 1. His supporting documentation suggests he will be "eligible for SPD Review on 10/4/18 which is ten (10) years from the date of placement of SPD Code." Pl.'s Compl., Ex. 1, p. 2.

Barnes alleges he remained in administrative segregation continuously from October 4, 2008, until he filed his Complaint on October 19, 2017. Pl.'s Compl. 3; Ex. 1, p. 2. He claims the cell rotation required him to change cells every three-to-seven days. Pl.'s Compl. 3. He maintains this placement (1) threatened his mental and physical health because he was housed in "filthy cells smeared with feces and other body fluids", (2) put him at greater risk from other inmates who suspected he was an informant, and (3) interfered with his ability to receive his mail. *Id.* at 1, 4, 6, 10. He asserts "the Defendants have never even once provided Plaintiff . . . a hearing or any other process to review his continued placement on 'cell rotation status.'" *Id*. at

9. He argues these "conditions [were] so harsh and unlawful that they . . . violate the First and Eighth Amendments. *Id*.

Barnes sues the Connally Unit Warden and other TDCJ personnel in their official capacities seeking declaratory and injunctive relief. *Id.* at 3. Specifically, he asks the Court to "[i]ssue a declaratory judgment stating that the acts and omissions of the Defendants have violated [his] rights under the First, Eighth, and Fourteenth Amendments." *Id*. at 20. He further asks the Court to order Defendants to "[f]ormulate and provide inmates access to an official policy with regard to 'cell rotation status.'" *Id*. He finally asks the Court to order Defendants to "[i]mmediately provide [him] with a fair and meaningful review hearing for removal from 'cell rotation status' and if the decision is to maintain [him] on this status, provide specific written reasons for the decision." *Id*. at 21.

The Court dismissed Barnes's Complaint for failure to state a non-frivolous claim. Dismissal Order, ECF No. 5. The Court reasoned a prison classification decision is "not subject to due process challenge unless it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Id*. at 3 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Court concluded "[t]he record fail[ed] to show the requisite 'extraordinary circumstances' that would warrant a constitutional claim." *Id.*

The Fifth Circuit Court of Appeals vacated the Court's judgment and remanded the case for further proceedings. *Barnes v. Givens*, 746 F. App'x 401, 402–03 (5th Cir. 2018). It explained the Court "did not analyze 'the severity of the restrictive conditions and their duration.'" *Id*. at 402 (citing *Wilkerson v. Goodwin*, 774 F.3d 845, 854–55 (5th Cir. 2014) (indicating that "the severity of the restrictive conditions and their duration [are] key factors" in deciding whether a prisoner has a liberty interest in his custodial classification)). Hence,

3

"[f]urther development of Barnes's claim is warranted, especially in light of his allegation that he has been in administrative segregation on cell rotation for a least 10 years." *Id*. at 402 (citing *Bailey v. Fisher*, 647 F. App'x 472, 476–77 (5th Cir. 2016) ("The duration of . . . confinement is a necessary component in the *Sandin* analysis.")). "In addition, . . . the district court failed to address his First Amendment claim involving the interference with his mail and his Eighth Amendment claim involving the conditions of his cells." *Id*.

> Further development of Barnes's First Amendment claim is needed based on his allegation that his incoming mail is frequently given to other inmates or 'delayed weeks or sometimes months.' Likewise, development of Barnes's Eighth Amendment claim is warranted in light of his allegation that he was forced to live in cells that were covered with feces, urine, blood, rotten food, and chemical agents and that some of his cells also had broken light fixtures, clogged toilets, and no running water.

*Id*.

The Court ordered Barnes to submit a more definite statement of his claims—which he provided. *See* Pl's Answer, ECF No. 19. The Court then ordered service on Defendants. Order, ECF No. 20.

Defendants Givens, Stengel, Robinson, Collier, Martinez, Gaitan, and Jenkins responded with a Motion to Dismiss Pursuant to Rule 12(b)(1) & 12(b)(6). Mot. to Dismiss, ECF No. 22. Givens, Stengel, Robinson, Martinez, Gaitan, and Jenkins asserted they "lack[ed] the authority to create policies for TDCJ." *Id*. at 3 (citing *Volk v. Gonzales*, Nos. 97-51032, 98-50199, 98-50386, 2000 WL 122381, at *1 (5th Cir. 2000) ("Neither defendant [warden or correctional officer] in this action had the power to effect the court's directives to expunge disciplinary cases, restore custodial classification, and restore lost good-time credits, and the district court therefore lacked power to order such relief.")). All Defendants—including TDCJ Executive Director Bryan

4

Collier—maintained they "lack[ed] the authority to change custodial classification." *Id*. Consequently, they argued:

> Essentially, these are not the defendants who can effectuate Barnes requested relief. . . . Thus, Barnes fails to establish the redressability element necessary to establish a case or controversy. The Court should dismiss these claims for lack of Article III standing.

*Id*. (citing *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001) ("it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.")).

Defendants also asserted Barnes's claims against them in their official capacities were barred by the Eleventh Amendment. *Id*. at 4; *see* U. S. CONST. amend. XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.").

Defendants noted "Barnes filed this suit October 19, 2017. Barnes complain[ed] that the unconstitutional actions began in January 2013. However, the statute of limitations bars any claims more than two years prior to the filing of his suit. Thus, any claims prior to October 19, 2015" were time barred. *Id*. at 8–9.

Defendants also noted "Barnes fail[ed] to specifically allege how Defendants were personally involved in . . . violating his constitutional rights." *Id*. at 9. They argued " '[p]ersonal involvement is an essential element of a civil rights cause of action.' " *Id*. (quoting *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983)).

## II.  APPLICABLE LAW

### A.  Federal Rule of Civil Procedure 12(b)(1)

5

As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. U.S. CONST. art. III, § 2. A federal court has the authority to hear only those cases (1) that are within the judicial power of the United States—as set forth in the Constitution, or (2) that Congress has granted to the courts. *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004). "[S]ubject-matter jurisdiction . . . involves a court's power to hear a case." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). The burden of establishing subject matter jurisdiction lies with the party seeking the federal forum. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

Rule 12(b)(1) permits a party to move for the dismissal of a complaint based on lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). In examining a Rule 12(b)(1) motion, a court may consider matters of fact in dispute. *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981). A court should grant a motion to dismiss for lack of subject matter jurisdiction only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim which would entitle him to relief. *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir.1998). A court's dismissal of a plaintiff's claim because it lacks subject matter jurisdiction is not a determination on the merits of the claim. *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir.1977) (per curiam). When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, a court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Id.*

### B. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint fails to state a claim when the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell*

6

*Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When deciding a Rule 12(b)(6) motion to dismiss, a "court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff [but] may not look beyond the pleadings in ruling on the motion." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996) (citing *McCartney v. First City Bank*, 970 F.2d 45, 47 (5th Cir.1992)). "This standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements.' " *In re S. Scrap Material Co.*, 541 F.3d 584, 587 (5th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). A well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

### III. ANALYSIS

#### A. Federal Rule of Civil Procedure 12(b)(1)

Barnes sues Defendants in their official capacities. He maintains Defendants' classification policies—which resulted in his extended placement in administrative segregation on cell rotation—threaten his mental and physical health because he is housed in "filthy cells smeared with feces and other body fluids", place him at greater risk from other inmates who suspected he was an informant, and interfere with his ability to receive his mail. Pl.'s Compl., 1, 4, 6, 10, ECF No. 1. He asserts "the Defendants have never even once provided Plaintiff . . . a

7

hearing or any other process to review his continued placement on 'cell rotation status.'" *Id*. at 9.

Defendants assert the Court should dismiss Barnes's Complaint for lack of jurisdiction under Rule 12(b)(1). Mot. to Dismiss, ECF No. 22. They argue they "are not the defendants who can effectuate Barnes requested relief. . . . Thus, Barnes fails to establish the redressability element necessary to establish a case or controversy and standing." *Id*. at 3. Defendants also assert Barnes's claims against them in their official capacities are barred by the Eleventh Amendment. *Id*. at 4.

Parties seeking relief in a federal court "must show that they have standing under Article III of the Constitution." *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 129 (2011). To establish standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81 (2000).

The Fifth Circuit remanded this case to the Court for further proceedings because the Court "did not analyze 'the severity of the restrictive conditions and their duration.' " *Barnes*, 746 F. App'x at 402 (citing *Wilkerson*, 774 F.3d at 854–55 ("the duration in segregated confinement that courts have found does not give rise to a liberty interest ranges up to two and one-half years")). It explained "[f]urther development of Barnes's claim [was] warranted, especially in light of his allegation that he has been in administrative segregation on cell rotation for a least 10 years." *Id*. at 402 (citing *Bailey*, 647 F. App'x at 476–77). "In addition, . . . the district court failed to address his First Amendment claim involving the interference with his

mail" *Id*. "A prison official's interference with a prisoner's legal mail may violate the prisoner's constitutional right of access to the courts. Additionally, such interference may violate the prisoner's First Amendment right to free speech—i.e., the right to be free from unjustified governmental interference with communication." *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). Furthermore, the district court failed to address "his Eighth Amendment claim involving the conditions of his cells. "A filthy . . . cell . . . might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978). Hence, Barnes has alleged an actual, concrete, and particularized injury in fact.

Defendants apparently concede Barnes has suffered an injury in fact. They argue the injury is not fairly traceable to them as they are powerless over prisoner classifications and they do not have the authority to redress his claims concerning his classification, mail, and conditions of confinement. Mot. to Dismiss 3, ECF No. 22. Hence, they assert Barnes lacks standing, and the Court should dismiss his claims.

Barnes sues Defendants in their official capacities. An official-capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id*. at 166. "Indeed, when officials sued in this capacity in federal court die or leave office, their successors automatically assume their roles in the litigation." *Hafer v. Melo*, 502 U.S. 21, 25, (1991) (citing Fed. R. Civ. Proc. 25(d)(1)). In fact, in this case Defendants were substituted pursuant to Rule 25(d). *See* footnotes 1–3.

"[I]n an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166. A § 1983 claim asserting a violation of

9

the plaintiff's federal constitutional rights may proceed in federal court as long as the relief sought against a state official in official capacities is "declaratory or injunctive in nature and prospective in effect." *NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015). "The failure of plaintiff to allege specific facts showing precisely how each of the named defendants was personally involved in the alleged [violations of a plaintiff's constitutional rights] does not furnish a basis for the dismissal of this action." *Bagwell v. Livingston*, No. SA-15-CV-584-DAE, 2016 WL 393553, at *2 (W.D. Tex. Feb. 1, 2016).

Undeniably, federal courts have intervened in TDCJ classification matters in the past. For example, in *Ruiz v. Estelle*, 679 F.2d 1115, 1144 (5th Cir.), *amended in part, vacated in part*, 688 F.2d 266 (5th Cir. 1982), the Fifth Circuit required Defendants—including Texas Department of Corrections Executive Director W. J. Estelle, Jr., — "to file with the court a plan setting forth an adequate classification system and a timetable for its implementation." *See also Ruiz v. Johnson*, 37 F. Supp. 2d 855, 871 (S.D. Tex. 1999), *rev'd and remanded sub nom. Ruiz v. United States*, 243 F.3d 941 (5th Cir. 2001) ("orders regarding the prisoner classification system were vacated with the 1992 Final Judgment" ). Federal courts have also intervened to protect the rights of prisoners. For example, in *Garner v. Livingston*, No. CA-C-06-218, 2011 WL 2038581, at *4 (S.D. Tex. May 19, 2011), a district court enjoined Defendants—including TDCJ Executive Director Brad Livingston—from enforcing the TDCJ grooming policy prohibiting plaintiff from wearing and maintaining a quarter-inch beard as a religious exercise. The Fifth Circuit subsequently affirmed the district court's judgment. *Garner v. Kennedy*, 713 F.3d 237, 248 (5th Cir. 2013). Indeed, there is substantial precedent for a district court to intervene in TDCJ classification and inmate policies.

As a result, the Court finds Barnes' injuries are fairly traceable to the policies of a state actor—TDCJ—and TDCJ can redress his claims.[4] The Court therefore concludes Barnes has standing under Article III.

Defendants also assert Barnes's claims are barred by the Eleventh Amendment. Mot. to Dismiss 4, ECF No. 22.

"Eleventh Amendment immunity operates like a jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state." *Union Pac. R. Co. v. Louisiana Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011). It divests federal courts of subject-matter jurisdiction over suits for retrospective relief against a state, unless the state has waived immunity or Congress has enacted a valid override. *Graham*, 473 U.S. at 169. Eleventh Amendment immunity extends to state administrative agencies. *Alabama v. Pugh*, 438 U.S. 781, 781–782 (1978). It also extends to state officials acting in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

The Supreme Court has recognized a limited exception to Eleventh Amendment immunity which permits suits for prospective relief against state officials in their official capacities. In *Ex parte Young*, 209 U.S. 123 (1908) and its progeny, the Supreme Court "held

---

[4] *See* OFFENDER ORIENTATION HANDBOOK, Feb. 2017, p. 7 ("1. Unit Classification Committee (UCC) Responsible for assigning an offender a custody level. This custody level designates where offenders shall live on the unit and what job(s) they are eligible for. Offenders appear before this committee when they arrive on a new unit. They also meet with the UCC when routine classification decisions are needed. 2. Administrative Segregation Committee (ASC) Responsible for the process of reviewing offenders for placement in administrative segregation and routine reviews of those offenders. 3. State Classification Committee (SCC) A central administrative classification committee that makes final decisions with regards to agency-wide issues and unit classification committee recommendations. During the intake process, the SCC makes decisions concerning the initial assignment of an offender to a unit. The SCC also makes final decisions regarding administrative segregation, safekeeping, and requests for protection. 4. Security Precaution Designator Review Committee (SPDRC) The authority that determines the eligibility for removal of a security precaution designator code from the offender's record. This committee is also the authority that determines if a security precaution designator should remain in the offender's record after designated timeframes expire."

that enforcement of an unconstitutional law is not an official act because a state can not confer authority on its officers to violate the Constitution or federal law." *Aguilar v. Texas Dept. of Criminal Justice*, 160 F.3d 1052, 1054 (5th Cir.1998). Hence, sovereign immunity does not bar an action by a plaintiff seeking prospective injunctive relief against a state official to prevent a continuing violation of federal law because "[t]he state has no power to impart to him any immunity from responsibility to the supreme authority of the United States." *Ex parte Young*, 209 U.S. at 160. In other words, "[t]o ensure enforcement of federal law . . . the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004). "In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.' " *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in judgment).

To the extent the Barnes seeks injunctive and declaratory relief on the grounds that Defendants continue to violate his constitutional rights, the doctrine of *Ex parte Young* is applicable, and the Court may exercise subject matter jurisdiction. But Barnes presumably underwent his SPD Review on October 4, 2018. Pl.'s Compl., Ex. 1, ECF No. 1-1. Further, Barnes is no longer housed at the Connally Unit. Pl.'s Notice of Address Change, ECF No. 25. "[H]is transfer to another prison has rendered moot these claims for relief." *Cooper v. Sheriff, Lubbock Cty., Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991). Thus, there is likely no continuing violation of Barnes's constitutional rights and the Court should dismiss his Complaint based on the Eleventh Amendment's jurisdictional bar—with leave to file a motion to alter or amend the

judgment and submit an amended complaint if he remains in administrative segregation with cell rotation at the Telford Unit.

### B. Federal Rule of Civil Procedure 12(b)(6)

Defendants note Barnes alleges unconstitutional actions which began with his placement in administrative segregation in January 2013. Mot. to Dismiss 8, ECF No. 22; *but see* Pl.'s Compl, Ex. 1, p. 2, ECF No. 1-1 ("Investigation reveals you are eligible for SPD Review on 10/4/18 which is ten (10) years from the date of placement of SPD Code."). But they further note he did not file this lawsuit until October 19, 2017. Mot. to Dismiss 8. They maintain the statute of limitations bars any claims more than two years prior to the filing of his suit. *Id.* (citing Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a); *Piotrowski v. City of Houston*, 51 F.3d 512, 514 n.5 (5th Cir. 1995); *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992)). Thus, they contend, any claims prior to October 19, 2015 are time barred. *Id.* at 9. Defendants also note "Barnes fails to specifically allege how Defendants were personally involved in allegedly violating his constitutional rights." *Id.* at 9. They argue "[p]ersonal involvement is an essential element of a civil rights cause of action." *Id.* (citing *Thompson v. Steele*, 709 F.2d 381, 381 (5th Cir. 1983)).

"There is no federal statute of limitations for actions brought pursuant to 42 U.S.C. § 1983." *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir. 1992). As a result, federal "courts considering § 1983 claims . . . borrow the general or residual statute for personal injury actions." *Owens v. Okure*, 488 U.S. 235, 249–50 (1989). In Texas, the applicable period for personal injury is two years. Tex. Civ. Pract. & Rem. Code § 16.003(a).

"While the limitations period is determined by reference to state law, the standard governing the accrual of a cause of action under section 1983 is determined by federal law."

13

*Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). "Under federal law, the [limitations] period begins to run 'the moment the plaintiff becomes aware that he has suffered an injury or has sufficient information to know that he has been injured.' " *Russell v. Board of Trustees*, 968 F.2d 489, 493 (5th Cir.1992). Specifically, "[t]he statute of limitations period commences once the plaintiff acquires possession of two critical facts: (1) an injury has occurred; and (2) the identity of the person who inflicted the injury." *Stewart v. Par. of Jefferson*, 951 F.2d 681, 684 (5th Cir. 1992). Moreover, "the limitations period commences when 'the aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge' thereof." *Jensen v. Snellings*, 841 F.2d 600, 606 (5th Cir. 1988) (quoting *Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 107 (5th Cir.1987)).

> The plaintiff need not have knowledge of fault in the legal sense for the statute to begin to run, but she must have knowledge of facts that would lead a reasonable person (a) to conclude that there was a causal connection between the treatment and injury or (b) to seek professional advice, and then, with that advice, to conclude that there was a causal connection between the treatment and injury.

*Harrison v. United States*, 708 F.2d 1023, 1027 (5th Cir. 1983).

However, "[i]n applying the forum state's statute of limitations, the federal court should also give effect to any applicable tolling provisions." *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993). "One exception to the statute of limitations in Texas is the continuing tort doctrine" relied on by some state courts of appeal. *Mitchell Energy Corp. v. Bartlett*, 958 S.W.2d 430, 443 (Tex. App.—Fort Worth 1997). Under this doctrine, if the wrongful conduct is repeated over a period of time, "each act creates a separate cause of action, and the cause does not accrue, for purposes of limitations, until the misconduct ends." *Rogers v. Ardella Veigel Inter Vivos Trust No. 2*, 162 S.W.3d 281, 290 (Tex. App.–Amarillo 2005, pet. denied). Thus, a continuing tort occurs where "the wrongful conduct continues to effect additional injury to the plaintiff until that

conduct stops." *Whitaker v. Collier*, 862 F.3d 490, 496 (5th Cir. 2017) (citing *Gen. Universal Sys., Inc. v. HAL*, Inc., 500 F.3d 444, 451 (5th Cir. 2007).

The Texas Supreme Court has not, however, endorsed the continuing tort doctrine. *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 n. 8 (Tex. 2005) ("we do not reach the court of appeals' invocation of the 'continuing tort doctrine,' a doctrine we have neither endorsed nor addressed, but that has been used by some courts of appeals to toll limitations until the last act of intentional infliction occurs"). The Texas Supreme Court recently explained the accrual rule in Texas is "a cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy," and the "fact that damage may continue to occur for an extended period . . . does not prevent limitations from starting to run." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 591 (Tex. 2017). Furthermore, "[t]he federal court may disregard the state tolling rule . . . if it is inconsistent with federal policy." *F.D.I.C. v. Dawson*, 4 F.3d 1303, 1309 (5th Cir. 1993).

With all of this in mind, the Fifth Circuit held in *Moon v. City of El Paso*, 906 F.3d 352, 358 (5th Cir. 2018), *cert. denied sub nom. Moon v. Cty. of El Paso, Tex.*, 139 S. Ct. 2616 (2019), that false imprisonment was a continuing tort in Texas:

> Every day behind bars is irreplaceable, with the final day as wrongful as the first. Making our best *Erie* guess, we believe the Supreme Court of Texas would side with the intermediate appellate courts and trusted treatises. False imprisonment is a continuing tort in Texas—the injury persists until the imprisonment ends— meaning Moon's claim accrued upon his release in December 2004. His false-imprisonment claim was thus timely.

*Id.* at 358.

In this case, Barnes complains about unconstitutional conditions which began on October 1, 2008 and apparently continued after he filed his lawsuit on October 19, 2017. *See* Pl.'s

15

Compl, ECF No. 1; Ex. 1, p. 2, ECF No. 1-1. The Court finds it should also side with Texas' intermediate appellate courts and conclude that Barnes's retention in administrative segregation for over ten years while at the Connally Unit—with continuous rotations through filthy cells smeared with feces and other body fluids and disruptions with his mail—is similarly a continuing tort. Consequently, his claims are not time barred.

Defendants also note "Barnes fails to specifically allege how Defendants were personally involved in allegedly violating his constitutional rights." Mot. to Dismiss 9, ECF No. 22.

> Barnes' answer reveals he "has no way of knowing for sure which, or if at all the Defendants are personally responsible for the filthy/broken cells, insufficient mail policy or the 'cell rotation' status." Barnes merely concludes without a factual basis, and without certainty that "cell rotation" status and subsequent alleged violations that occur from its practice "have to originate with one or more of the Defendants."

*Id.* (quoting Pl.'s Answer 6. ECF No. 19).

As the Court notes above, Barnes sues Defendants in their official capacities. An official-capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *Graham*, 473 U.S. 165. Barnes's failure to allege specific facts showing precisely how each of the named defendants was personally involved in the alleged violations of his constitutional rights does not furnish a basis for the dismissal of his suit.

### IV. CONCLUSION AND ORDERS

Consequently, for the reasons discussed above, the Court enters the following orders:

**IT IS ORDERED** that "Defendants Givens, Stengel, Robinson, Collier, Martinez, Gaitan, and Jenkins' Motion to Dismiss Pursuant to Rule 12(b)(1) and 12(b)(6)" (ECF No. 22) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff Joshua Barnes "§ 1983 Complaint" (ECF No. 1), as amended by his "Answer to Court's Order for a More Definite Statement" (ECF No. 19), is **DISMISSED WITHOUT PREJUDICE**.

**IT IS FINALLY ORDERED** that the District Clerk shall **CLOSE** this case.

SIGNED this 29th day of October, 2019.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE